DECISION AND JUDGMENT ENTRY
This is an appeal from a December 22, 1999 judgment entry of the Lucas County Court of Common Pleas, Juvenile Division, in which the court granted a motion for permanent custody of two minor boys, Solomon W. and Korion W., filed by appellee, Lucas County Children's Services ("LCCS") and terminated the parental rights of appellant, Angel W. Pursuant to the procedure outlined by the United States Supreme Court in Anders v. California (1967), 386 U.S. 738, appellant's appointed counsel has filed a motion to withdraw, accompanied by a brief with three proposed assignments of error and an affidavit in which he avers that after careful review of the record and of existing case law, he believes there are no arguable issues for appeal. He also avers that he has sent appellant a copy of his motion to withdraw and of the brief containing the proposed assignments of error to give appellant an opportunity to file any additional arguments she wants this court to consider. Appellant did not file a separate brief or any additional arguments.
The three proposed assignments of error presented in theAnders brief are:
 "1. THE COURT ERRED TO MOTHER'S PREJUDICE BY FAILING TO APPOINT A SEPARATE GUARDIAN AD LITEM TO SPEAK FOR HER BEST INTERESTS
 "2. THE MANIFEST WEIGHT OF THE EVIDENCE FAILS TO SUPPORT A FINDING OF PERMANENT CUSTODY
 "3. THE COURT SHOULD HAVE APPOINTED AN ATTORNEY TO REPRESENT THE CHILDREN SEPARATELY AND TO MAKE SURE THEIR DESIRES WERE MADE CLEAR UPON THE RECORD "
After carefully considering the proposed assignments of error and independently reviewing the record to decide if any arguable issues exist, this court finds, for the following reasons, that this case is wholly frivolous, see State v. Duncan
(1978), 57 Ohio App.2d 93, 93-94.
The record shows that this case began on July 17, 1998 when LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing relating to Solomon W. and
Korion W. ("the two boys"). The complaint contained allegations that appellant and her husband were in an abusive relationship and that the children were not provided with adequate care or food. Pursuant to a magistrate's order filed on the same day as the complaint, LCCS was awarded temporary custody of the two boys.
On August 17, 1998, the trial court appointed a guardianad litem ("GAL") for the two boys. The next day, the court appointed an individual to serve as both attorney and guardian adlitem for appellant.
On August 26, 1998 the court approved a case plan and made it a part of the record. The case plan called for appellant to complete drug treatment, parenting classes, mental health counseling, domestic violence counseling, and to begin budgeting her income so that it was used to provide a place to live and food and clothing for her two boys.[1]
On September 23, 1998 the trial court filed a judgment entry adopting the findings of the magistrate that the two boys were dependent. The trial court awarded temporary custody of the boys to LCCS effective September 3, 1998.
On October 19, 1998, the individual who had been appointed as appellant's attorney and GAL filed a motion to withdraw. On January 11, 1999, the trial court granted the motion to withdraw. The court subsequently appointed new counsel to represent appellant on February 9, 1999.
On June 28, 1999, LCCS filed a motion for permanent custody. Appellant filed a motion to be conveyed from prison to the trial court for the hearing on the motion for permanent custody. The trial court granted appellant's motion to convey, and she was present at the hearing.
The transcript of the hearing shows that several officers from the Toledo Police Department were called as witnesses. Each testified regarding reports they made of domestic violence incidents that took place between appellant and her husband. Their testimony showed an ongoing problem. One officer's testimony showed that appellant was arrested for committing felonious assault when she stabbed her husband with a knife.
Appellee also offered certified documents from the Lucas County Court of Common Pleas, General Division, that showed that appellant was convicted on the felony charge, was sentenced and released on community control, violated the terms of community control and was sent to serve a three year prison term. The documents were admitted into evidence without objection.
A supervisor and a caseworker from LCCS testified regarding their contact with appellant in this case. Both indicated that if appellant was with her husband, she was uncooperative and aggressive. However, on the occasions when they saw appellant alone, she was calm and more cooperative. Furthermore, when she was alone she acknowledged an ongoing problem of domestic abuse in her home.
The supervisor testified that appellant told her that her husband had beaten her with a broomstick, tried to choke her with a wire around her neck, and had beaten her on different occasions when she was pregnant causing her water to break five days before the birth of Solomon W. and causing her to have a miscarriage on another occasion. She said her husband had put her head in the toilet, had urinated on her, and had thrown her outside the house when she was completely naked. She said she kept her clothes in a garbage bag so if her husband caught her trying to escape she could tell him she was just taking out the garbage. She refused to go to a shelter, even after the supervisor called and made sure there was an opening for her at the shelter.
The caseworker testified that appellant often refused to sign releases so that the caseworker could get reports from care providers to confirm whether appellant was complying with the terms of the case plan. She said that she could only confirm that appellant did eventually complete parenting classes, but aside from that she was not aware of any further compliance on the part of appellant with the case plan requirements. She said that a cousin of appellant who lived in Columbus, Ohio had recently called expressing an interest in adopting the two boys. She said that she would request that a study be conducted by the children services agency in the county where the cousin lived to see if that would be an appropriate placement. She also testified that if that placement was not appropriate, the foster parents who had cared for the boys (now three years old and one-and-a-half years old) for more than a year were willing to adopt the boys.
The GAL for the children testified that he had personally observed appellant and her husband to be aggressive and violent. He testified that based upon his own independent review of the record, interviews he conducted with several persons, his attendance at case plan meetings and his observation of appellant and her husband, he believed the problems that caused the removal of the two boys from appellant's custody had not been substantially remedied. He said in his opinion, it was in the best interest of the two boys to grant permanent custody to LCCS.
Appellant then called two witnesses, against the advice of her trial counsel. The first witness was a case manager from Harbor Behavioral Health Care. He testified that he works with persons in jail to help them reintegrate into the community, to set up treatment goals and to do crisis intervention. He said that he worked with appellant when she was in jail on the felonious assault charge. He testified that she was afraid that her two boys would be taken from her and that he helped her enroll in parenting classes in jail. He said that she eventually completed the classes, but took several months longer than normal to do so because of irregular attendance. He also testified that he tried to help appellant find housing when she was released from jail on community control, and that she came to the meeting with him with her husband.
The second witness called to the stand against the advice of appellant's trial counsel was appellant herself. She admitted the domestic violence that had occurred, and said she planned to divorce her husband when she was released from prison. She said she had talked on the telephone that morning with the trial judge who sentenced her to prison. According to her testimony, the judge said he would grant her shock probation within sixty or ninety days after she: 1) filed a request; and 2) filed a copy of a police report showing some mistakes were made when she entered a guilty plea. She said the only reason she did not comply with community control requirements was because she instead made a choice to finish the parenting classes so she could get her two boys back. She said she could not manage to arrange for housing, attend parenting classes and comply with community control requirements all at the same time.
On cross-examination, she admitted she quit visiting her two boys. She said that she was afraid if she appeared for her visitation appointments, LCCS personnel would call and report her presence to the police, who would arrest her for not complying with her community control requirements. She also admitted that she gave a false name to the police when she was stopped with a friend. She said she was trying to hide her real identity so she could stay free and could complete her case plan requirements. She knew that if they realized her true identity she would be arrested for not complying with community control requirements.
On December 22, 1999, the trial court filed a judgment entry in which it said that it found, by clear and convincing evidence, that the two boys could not or should not be returned to their parents within a reasonable time. The court ruled that permanent custody awarded to LCCS was in the best interest of the boys so that an adoption plan could be implemented. The court expressly found that R.C. 2151.414(E) applies in this case because appellant is being sent to prison for three years and will not be able to care for her sons in a reasonable time. The court also found that appellant failed to complete the case plan and failed to substantially remedy the conditions that caused the two boys to be placed in care outside of her home. Appellant challenged these rulings by filing a notice of appeal.
In support of the first proposed assignment of error, appointed counsel for appeal says that appellant's testimony at trial shows she "is not equipped to function in the real world." He says a GAL would have been able to speak to appellant's best interests. He then notes, however, that the failure of the trial court to ensure that a GAL continued to be appointed for appellant was harmless in this case for several reasons.
First, a GAL would not have had the authority to act in the appellant's stead and could not have prevented her from choosing to testify or to call other witnesses. He says that the testimony from appellant and from the other witness she insisted on calling to the stand show that appellant is not able to care for her children because she is not capable of the kind of reasoning necessary to parent a child.
Second, the GAL could not have changed the fact that appellant has been sentenced to serve three years in prison. He acknowledges that the three year prison term satisfies the requirements of R.C. 2151.414(E)(12).
Pursuant to R.C. 2151.414(B) the trial court could grant permanent custody of the two boys to LCCS if the court found, by clear and convincing evidence, that (1) it is in the best interest of the two boys to grant permanent custody to LCCS and (2) the two boys cannot be placed with either of their parents within a reasonable time or should not be placed with their parents. R.C.2151.414(E) provides, in pertinent part:
 "In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of Section 2151.353 [2151.353.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.353.3] of the Revised
 Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
 "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing."
The Supreme Court of Ohio has explained that "clear and convincing" is that level of evidence which is sufficient to establish in the mind of the trier of fact a "firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. Accordingly, we have reviewed the record to see if it contains clear and convincing evidence to support the trial court's ruling in this case.
We find that the record does contain clear and convincing evidence to support the trial court's ruling in this case. Standing on its own, the evidence of appellant's incarceration at the time of the dispositional hearing and of her three-year prison sentence to be served was clear and convincing evidence that the two boys could not be placed with appellant within a reasonable time. Even if we assumed arguendo that a GAL should have been appointed for appellant, we would be compelled to find that omission a harmless error, since, as appellant's appointed counsel has acknowledged, the appointment of a GAL would not have changed the fact that appellant is going to prison for three years and the requirements of R.C. 2151.414(E)(12) are met. Appellant's first proposed assignment of error has no merit.
In support of the second proposed assignment of error, appellant's trial counsel argues that none of the witnesses called at trial "were able to show that the children were exposed to the domestic violence to the degree necessary to sustain a finding of permanent custody by clear and convincing evidence." He says that LCCS did not present clear and convincing evidence that appellant failed to substantially remedy the problem
(domestic violence) that caused the removal of the children from her home, the factor found in R.C. 2151.414(E)(1) to support a trial court's ruling that a child cannot or should not be placed with a parent within a reasonable time. He again acknowledges, however, that even if LCCS did not show clear and convincing evidence to establish the factor found in R.C. 2151.414(E)(1), it did show clear and convincing evidence to establish the factor found in R.C. 2151.414(E)(12).
The trial court acknowledged that LCCS did not show that either child was actually injured by appellant or her husband during any episode of domestic violence. However, the trial court said there was clear and convincing evidence that the children were present when some of the violence happened, and that the domestic violence problem, that was one cause for removing the two boys from appellant's custody in this case, had not improved substantially since the two boys were taken from appellant's custody. Therefore, the record does contain clear and convincing evidence to support the trial court's finding that the requirements of R.C. 2151.414(E)(1) were met in this case.
Even if we assumed arguendo that the requirements of R.C. 2151.414(E)(1) were not met in this case, as we have already noted, there is clear and convincing evidence to show that the requirements of R.C. 2151.414(E)(12) are met. Accordingly, the second proposed assignment of error is without merit.
In support of the third proposed assignment of error, appellant's appointed counsel says that a separate attorney should have been appointed for the two boys so their desires could have been presented to the court. He then acknowledges that there were no allegations that either boy was abused, a prerequisite in Juv.R. 4(A) for the appointment of counsel to represent the interests of a child. He also acknowledges that appellant did not raise any issue at trial regarding the desires of the two boys. Finally, he acknowledges that because appellant placed her older son with her grandmother when he was four months old, and because she did not maintain continuous visitation with either of her boys, it is not possible to argue with merit that the appointment of counsel for the two boys would have changed the outcome of the dispositional hearing in this case.
First, we note that due to the young ages of the two boys, even if separate counsel had been appointed to represent their interests, it may have been difficult or impossible for that counsel to learn the desires of the boys concerning their placement. Second, we once again note that there is clear and convincing evidence in the record to support the finding of the trial court that the factors found in R.C. 2151.414(E)(1) and (12) were met in this case. Accordingly, we agree that any expression of a desire of the two boys to remain in appellant's custody would not have changed the outcome of the dispositional hearing in this case. We further find that there was clear and convincing evidence to support the ruling of the trial court that it was in the best interest of the two boys to grant LCCS permanent custody of the two boys so they could be adopted.
Accordingly, we conclude there is no merit in the third proposed assignment of error.
Our independent review of the record failed to reveal any arguable issues for appeal, and confirmed the representation by appointed counsel that the presented potential assignments of error lacked any merit. Appellant's three proposed assignments of error are not well-taken. Accordingly, counsel's request to withdraw is granted, and this case is found wholly frivolous. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the court costs of this appeal.
Peter M. Handwork, J., Richard W. Knepper, P.J.,Mark L. Pietrykowski, J., CONCUR.
[1] The case plan also included appellant's husband, and later another man who allegedly was the father of one of the two boys. However, neither appellant's husband nor the other man have appealed the decision of the trial court terminating their parental rights, so we will not discuss the parts of the record that pertain to them.